1

2

3                    **UNITED STATES DISTRICT COURT**

4                         **DISTRICT OF ALASKA**

5

6

7    **XIAOFANG MONTELLA,**                    )

8                    **Plaintiff,**            )    **3:16-CV-00251 JWS**
                                               )
9            **vs.**                           )    **ORDER AND OPINION**
                                               )
10                                             )    **[Re: Motion at docket 17]**
     **CHUGACHMIUT,**                          )
11                                             )
                                               )
12                   **Defendant.**            )
                                               )
13   _____ )

14                         **I.  MOTION PRESENTED**

15          At docket 17, Defendant Chugachmiut (Chugachmiut or Defendant) filed a

16   motion for summary judgment as to the claims brought against it by Plaintiff Xiaofang

17   Montella (Plaintiff).  Plaintiff responded at docket 25.  In her response, Plaintiff opposed

18   summary judgment on the merits and also as premature.  She asked the court to

19   provide her additional time to conduct discovery pursuant to Rule 56 of the Federal

20   Rules of Civil Procedure.[1]  Defendant replied at docket 29, stating that it did not oppose

21   the request for additional time to conduct limited discovery.  The court granted Plaintiff's

22   request for additional time and allowed for supplemental briefing after discovery had

23   been conducted.  Plaintiff filed her supplemental opposition at docket 46 and docket 61.

24

25

26          [1]Plaintiff cites Rule 56(f).  The court presumes that Plaintiff meant to cite Rule 56(d).
     Rule 56(d) was, until recently, Rule 56(f).  While the number of the rule has been altered, the
27   spirit of the rule remains unchanged.  *See Michelman v. Lincoln Nat'l Life Ins. Co.*, 685 F.3d
     887, 899 n. 7 (9th Cir. 2012) ("[F]ormer Rule 56(f) ... is substantively the same as current Rule
28   56(d).").

                                           -1-

Defendant filed its supplemental reply at docket 62. Oral argument would not be of assistance to the court.

## II. BACKGROUND

Defendant is a non-profit tribal consortium that provides, among other things, health care services throughout the Chugach Region. It is governed by its member tribes, with each tribe electing one individual to sit on the board of directors. Chenega IRA Council of Chenega Bay, Alaska is one of its member tribes.

Plaintiff is of Chinese national origin and English is her second language. In May or June of 2014, Plaintiff applied for a Community Health Aide Trainee position at the Chenega Bay health clinic, which is operated by Defendant. The position was a combined one, where the trainee would also serve as a custodian for the clinic. Lloyd Kompkoff, Chenega IRA Council's alternate Chugachmiut board member and the Vice President of Chenega Corporation, participated in Plaintiff's interview for the position. Plaintiff was hired and began working in the combined trainee/custodial position as of June 24, 2014.

As part of Plaintiff's trainee position, she completed certain prerequisite courses that were necessary to enroll in the community health aide certification program with Alaska Native Tribal Health Consortium (ANTHC). ANTHC informed Plaintiff's Chugachmiut supervisor, Sue Steward, that Plaintiff had not been admitted into its January 2015 session but that she would be considered for the October 2015 session. Plaintiff continued in her position as a trainee and custodian at the Chenega Bay clinic.

In May 2015, the Executive Director of the Chenega IRA Council, Shelly Wade, contacted Steward to inform her that Chenega IRA Council community members had expressed concern over Plaintiff's English language communication skills. Steward responded that Plaintiff was meeting all requirements and expectations in her position as a community health aide trainee. Wade continued to correspond with Chugachmiut management and employees about Plaintiff's language proficiency and the hiring process for Chenega Bay's clinic throughout the summer of 2015.

1    During this time, the Chenega Corporation had an ongoing road access dispute

2  with Plaintiff's fiancé, John Lunetta.  Chenega Corporation believed that Lunetta was

3  trespassing on its property.  Plaintiff and Lunetta were concerned about Plaintiff's job

4  security.  Steward informed Plaintiff and Lunetta that she would support Plaintiff in her

5  training position.  Lunetta and Chenega Corporation were unable to resolve their

6  dispute and Lunetta filed a lawsuit in state court on October 15, 2015.

7    Plaintiff was not admitted to ANTHC's October 2015 session for community

8  health aide certification, but on October 9, 2015, ANTHC told Steward that Plaintiff

9  would again remain in the pool of applicants and, while no guarantees could be made,

10  she would be a "high priority" for the February 2016 training session.  Shortly thereafter,

11  on October 19, 2015, Defendant eliminated Plaintiff's trainee position.  On October 20,

12  2015, Steward informed Plaintiff of the termination but told her she could stay on at the

13  clinic as a custodian and as a volunteer emergency responder in Chenega Bay.  The

14  next day, Plaintiff resigned from her position as custodian.

15    Plaintiff subsequently filed for unemployment insurance benefits.  In her appeal

16  of the denial of benefits she stated that she believes she was terminated in retaliation

17  for submitting an affidavit against Chenega Corporation in Lunetta's court case.  She

18  later filed a complaint with the Equal Employment Opportunity Commission alleging

19  discrimination in violation of Title VII.  The complaint was dismissed based on

20  Defendant's status as a "tribal entity."  This lawsuit followed.  In her complaint, she

21  brings a claim for discrimination under Title VII, as well as a claim for breach of the duty

22  of good faith and fair dealing.  Defendant moves for summary judgment.

23                          **III.  STANDARD OF REVIEW**

24    Summary judgment is appropriate where "there is no genuine dispute as to any

25  material fact and the movant is entitled to judgment as a matter of law."[2]  The materiality

26  requirement ensures that "only disputes over facts that might affect the outcome of the

27

28        [2]Fed. R. Civ. P. 56(a).

suit under the governing law will properly preclude the entry of summary judgment."[3]

Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]  However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[5]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[6]  Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[7]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[8]  All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[9]  However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[10]

## IV.  DISCUSSION

---

[3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4]*Id.*

[5]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[6]*Id.* at 323.

[7]*Id.* at 323-25.

[8]*Anderson,* 477 U.S. at 248-49.

[9]*Id.* at 255.

[10]*Id.* at 248-49.

-4-

## A. Title VII

Defendant argues that Plaintiff cannot maintain her discrimination claim as a matter of law because Defendant is not subject to employment discrimination claims under Title VII. Indeed, Indian tribes are exempt from the definition of employer in Title VII.[11] The exemption is in furtherance of tribal sovereign immunity, the purpose of which is "to promote the ability of Indian tribes to control their own enterprises."[12] While Defendant itself is not a tribe, it is nonetheless exempt under Title VII because it is a consortium organization controlled by its member tribes and operated to benefit those tribes.[13]

Plaintiff does not dispute Defendant's status as a tribal entity but rather argues that Defendant waived its immunity under Title VII. She relies on the fact that Defendant declares itself to be an "equal opportunity employer" on its website and makes a similar representation on its employment applications:

> [Chugachmiut provides] equal access to . . . employment . . . without regard to race, color, national origin, religion, sex, gender identity (including gender expression), sexual orientation, disability, age, marital status, family/parental status, income derived from a public assistance program, political beliefs, veteran status, or any other status or classification protected by applicable state or federal law.[14]

While a tribe may waive immunity to suit, the court cannot imply such a waiver. It must be unequivocally expressed.[15] There is a strong presumption against waiver of

---

[11]42 U.S.C. § 2000e(b).

[12]*Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1188 (9th Cir. 1998)

[13]*Dille v. Council of Energy Res. Tribes*, 801 F.2d 373 (10th Cir. 1986) (holding that Congress intended to exempt individual Indian tribes as well as collective efforts by Indian tribes under Title VII); *Pink*, 157 F.3d at 1188 (citing *Dille* with approval and holding that the defendant qualified for the tribal exemption because it was created and controlled by two Indian tribes for the purpose of collectively providing services to members of each tribe).

[14]Doc. 25 at p. 5.

[15]*Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1016 (9th Cir. 2016).

tribal sovereign immunity.[16]  In *Allen v. Gold Country Casino*, the Ninth Circuit held that the tribal casino did not unequivocally waive its immunity when it stated in its employment application that employees could be terminated "for any reason consistent with applicable state or federal law" or when it stated in its employee orientation handbook that it practices equal opportunity employment and does not discriminate based on federally protected categories.[17]  The court concluded that such statements only imply a willingness to submit to lawsuits and were not clearly expressed waivers of tribal sovereign immunity.[18]  The court relied on the fact that the statements "did not mention court enforcement, suing or being sued, or any other phrase clearly contemplating suits against the [c]asino."[19]  Likewise, Defendant's website and application representations relied on by Plaintiff to support her waiver argument only mention being an equal opportunity employer; they do not mention being sued or court enforcement.  Any waiver would therefore have to be implied, which is insufficient for the court to exercise jurisdiction over Plaintiff's Title VII claim.[20]

**B. Good Faith and Fair Dealing**

Defendant also moves for summary judgment as to Plaintiff's contractual breach of good faith and fair dealing claim on the basis that she has not provided any evidence to show such a breach.  The covenant of good faith and fair dealing is implied in all at-

---

[16]*Demontiney v. U.S. ex rel. Dep't of Interior, Bureau of Indian Affairs*, 255 F.3d 801, 811 (9th Cir. 2001).

[17]464 F.3d 1044, 1047 (9th Cir. 2006).

[18]*Id.*

[19]*Id.*

[20]*See also Gilbertson v. Quinault Indian Nation,* 495 Fed.Appx. 779 (9th Cir. 2012) (affirming trial court's dismissal of a Title VII claim against the defendant because "[t]he language of the employee handbook stating that employees are 'protected' by Title VII was not a sufficiently clear wavier of sovereign immunity."); *Cf. Pratt v. Chenega Integrated Sys.*, 2007 WL 2177335, 2007 WL 2177335, at *3-4 (N.D. Cal. July 27, 2007) (holding that statutory exemptions for claims under Title VII cannot be waived).

will employment contracts. "This covenant does not lend itself to precise definition, but it requires at a minimum that an employer not impair the right of an employee to receive the benefits of the employment agreement"[21] and that the "employer treat like employees alike."[22] The covenant has both an objective and subjective component to consider. "An employer can commit *either* an objective *or* subjective breach of the covenant."[23] The objective component focuses on the employer's conduct. It "'prohibits the employer from dealing with the employee in a manner that a reasonable person would regard as unfair.'"[24] Unfair actions include disparate employee treatment, terminations on grounds that are unconstitutional, and firing that violates public policy.[25] Also, under the objective component, "an employee may not be terminated in express violation of the employee's contract terms."[26] "The subjective component focuses on the employer's motives."[27] It requires a showing that the employer's decision to terminate the employee was "actually . . . motivated by an improper or impermissible

---

[21]*Jones v. Cent. Peninsula Gen. Hosp.*, 779 P.2d 783, 789 (Alaska 1989).

[22]*Id.* at 789 n. 6.

[23]*Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 62 (Alaska 2002) (emphasis added); *see also Thomas v. State*, 377 P.3d 939, 948 (Alaska 2016) ("An employer can breach either component."); *Crowley v. State, Dep't of Health & Social Servs.*, 253 P.3d 1226, 1230 (Alaska 2011) ("If an employer breaches either component, the employer breaches the implied covenant.").

[24]*Smith v. Anchorage Sch. Dist.*, 240 P.3d 834, 844 (Alaska 2010) (quoting *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 761 (Alaska 2008)).

[25]*Crowley*, 253 P.3d at 1232.

[26]*Id.*

[27]*Id.* at 1230.

objective."[28]  The plaintiff must show more than just speculation about the motives for the termination.[29]

Defendant first argues that Plaintiff was not actually terminated because the custodial portion of her job duties remained and she was invited to stay with the health clinic in that capacity.  It therefore argues that her claim for wrongful termination pursuant to the implied covenant must fail.  The court disagrees with Defendant's assessment.  It is undisputed that the community health aide trainee position was eliminated, leaving only a partial job position that was no longer related to health care and did not provide the same amount of hours.  A jury could reasonably conclude that the elimination of the health care portion of Plaintiff's job could constitute constructive discharge.  That is, taking the facts in the light most favorable to Plaintiff, a jury could conclude that a reasonable person in Plaintiff's position would have felt compelled to resign after the trainee portion of the job was eliminated.[30]

Defendant also argues that the undisputed facts show that it terminated Plaintiff's position solely for budgetary reasons, and therefore Plaintiff cannot make the required showing of subjective or objective bad faith.  In support, Defendant relies on testimony from Steward who avers that she was the one to recommend eliminating Plaintiff's position due to budgetary concerns.  She states that the costs of paying for itinerant coverage while waiting for Plaintiff to receive her heath aide certification were too great and because there was no guarantee that Plaintiff would be admitted to the February 2016 training session with ANTHC, she recommended to Kimberly Cohen, Chugachmiut's Director of Health Services, and Phyllis Wimberley, Chugachmiut's

---

[28] *Thomas*, 377 P.3d at 948 (internal quotation marks omitted).  Defendant argues that the subjective component is only shown if the employer discharged an employee for the purpose of depriving him or her of one of the benefits of the [employment] contract.  Such a reason, however, is merely an example of an impermissible objective.  *See Crowley*, 253 P.3d at 1230.

[29] *Thomas*, 377 P.3d at 948.

[30] *Charles*, 55 P.3d at 60.

Deputy Director, that the trainee position be eliminated and replaced with an already certified health aide.[31]

Emails and documents provided by Plaintiff raise issues of fact regarding Steward's stated reason. A memorandum from Cohen to Wimberley dated October 14, 2015, discusses Plaintiff's position at the clinic and the Chenega Bay community's concerns about her language proficiency.[32] In the memorandum, Cohen states that Wade, the Executive Director of the Chenega IRA Council, had been in contact with employees of Chugachmiut about Plaintiff's employment at the clinic. Cohen states that she talked to Wade about these concerns and that the plan was for Plaintiff to take classes to improve her English. Although the memorandum is dated only a few days before Plaintiff's position was terminated for budgetary reasons, there is no mention of the strained budget for the trainee position. An email from Cohen to Wimberley on October 16, 2015, states that the plan was for Plaintiff to take an English proficiency test.[33] Only three days later, on October 19, 2015, Wimberley announces that she was terminating the trainee position after months of "[c]ommunity concerns."[34] Again, the correspondence does not mention budgetary reasons. There was no mention in the correspondence that the elimination of the trainee position was recommended by Steward. Indeed, the next day Steward sent an email indicating that the termination of the position was per the instruction of Wimberley.[35] On October 20, 2015, Cohen sent an email requesting to talk to Wimberley and Jan Vanderpool, the CEO of Chugachmiut,

---

[31]Doc. 19 at p. 5.

[32]Doc. 46-4 at p. 1.

[33]Doc. 46-5 at p. 1.

[34]Doc. 46-6 at p. 1.

[35]Doc. 46-9 at p. 1.

in order to "clarify a couple things about [Plaintiff]."[36]  The memorandum and emails are evidence from which a jury could conclude that Wimberley decided to eliminate the position, not because of budget reasons as Steward claims but because of concerns from members of the Chenega Bay community, the community which had an ongoing dispute with Plaintiff's fiancé and which complained about Plaintiff's English language skills.

The emails provided by Plaintiff also raise an issue of fact regarding Steward's statement that her decision to terminate the trainee position was based on the fact that ANTHC officials told her Plaintiff was unlikely to be selected to attend the February 2016 training and that another delay would place too much financial strain on the clinic.[37]  An October 9, 2015 email from ANTHC officials to Steward states that Plaintiff would be a "high priority" for the February 2016 session.[38]  The email also states that Steward would receive official notification about Plaintiff's placement in December of 2015, but Plaintiff's position was terminated before any final word from ANTHC as to her admission status.  Also, the October memorandum from Cohen to Wimberley indicates that they expected Plaintiff to start the ANTHC program in the winter of 2016.[39]

Defendant argues that there is no evidence to show that Chenega leadership actually pushed Chugachmiut to eliminate Plaintiff's position or that they even had a connection to that decision.  In support of its position that the concerns of Chenega and its representatives did not factor into Chugachmiut's personnel decision, Defendant filed 1) the declaration of Larry Evanoff, Vice Chair of the Chugachmiut Board of Directors who represents Chenega IRA Council on the board and is also President of the Chenega IRA Council, and 2) the declaration of Lloyd Kompkoff, the alternate Chenega

---

[36]Doc. 46-7 at p. 1.

[37]Doc. 63-2 at pp. 4-5.

[38]Doc. 46-1 at p. 1.

[39]Doc. 46-4 at p. 1.

IRA Council representative on the Chugachmiut board and the Vice President of Chenega Corporation. These are the two people who have connections to both Chenega IRA Council and Chugachmiut. Both men assert that they, as Chugachmiut board members, do not get involved in Chugachmiut personnel matters, except for appointing the Chugachmiut Executive Director, and that they "never had a discussion with anyone at Chugachmiut– not employees or Board members– regarding [Plaintiff] or [Plaintiff's] employment with Chugachmiut."[40] They assert that they did not know of any complaints about Plaintiff's English language proficiency, nor did they discuss the property dispute between Plaintiff's fiancé and Chenega Corporation with anyone at Chugachmiut.

Plaintiff argues that emails she received from Chenega Corporation and Chenega IRA Council call into question the credibility of the declarations. Contrary to Evanoff and Kompkoff's averments that they were not involved in Defendant's employment matters and that they were not aware of any concerns regarding Plaintiff's English language proficiency, Evanoff and Kompkoff received emails from Wade, the Executive Director of the Chenega IRA Council, about Plaintiff's employment at the clinic and how to address the community's concerns about her English language proficiency. As noted above, Wade raised those concerns about Plaintiff's employment at the clinic with Plaintiff's supervisor, Steward. The emails demonstrate that Evanoff and Kompkoff's knew about Wade's efforts: Wade forwarded them her emails with Steward; she mentioned that there was a "system" in place to deal with Plaintiff's English language skills; and she told them about the opportunity to meet with Defendant's Director of Health Services, Cohen, and expressed a desire to talk to Cohen about the "hiring process" at the clinic.[41] These emails do indeed raise an issue

---

[40]Doc. 20 at p. 2; doc. 22 at p. 2.

[41]Doc. 61-2 at p. 1; Doc. 61-3 at p. 1.

of fact as to the accuracy and veracity of the declarations submitted in support of Defendant's motion.

Defendant argues that the fact that Kompkoff and Evanoff were included in group emails on the subject does not demonstrate that they or other Chenega representatives had any personal involvement in Plaintiff's termination. It argues that there is no evidence that the two men ever expressed personal concern about her employment at the clinic or pushed to eliminate her position there. While true, emails submitted by Plaintiff nonetheless establish a connection between leaders in the Chenega Bay community and Chugachmiut management in relation to Plaintiff's employment at the Chenega Bay clinic. The evidence shows that in July of 2015, Wade was pressing Chugachmiut officials about Plaintiff's employment and then reporting back to leaders in the Chenega Bay community. Moreover, drawing all inferences in favor of Plaintiff, there is evidence to support a finding that the pressure was improperly motivated, particularly given the conflict between Lunetta and Chenega Corporation at this time. Steward herself stated that she was "perplexed at the bellicosity of [Wade's] approach."[42] She did not share in the community's concerns and told Wade that Plaintiff "excels at anything she undertakes."[43] In mid-October, right at the time Plaintiff's fiancé filed a lawsuit against Chenega Corporation, the issue of Plaintiff's position at the clinic resurfaced. At that time, drawing all inferences from Cohen's October 14th memorandum and October 16th email in favor of Plaintiff, Plaintiff's clinic supervisors did not have plans to eliminate the trainee position but instead planned for Plaintiff to continue taking English classes and tests. Three days later, Wimberley, the Deputy Director of Chugachmiut, announced the elimination of the trainee position due to

---

[42]Doc. 46-2 at p. 1.

[43]Doc. 46-3 at p. 2.

1  "community concerns."[44]  This evidence suggests some connection between the

2  Chenega community and Defendant's decision to eliminate Plaintiff's position.

3      Given the conflicting reasons in the record for the elimination of Plaintiff's

4  position, the timing of the termination in relation to the property dispute, and emails

5  showing pressure being placed on Chugachmiut from Chenega representatives in

6  relation to Plaintiff's position and showing the possible involvement of high level

7  Chugachmiut management in the elimination of a trainee position, there is at least some

8  evidence from which a jury could conclude that Chugachmiut's decision to eliminate

9  Plaintiff's position was improperly motivated.[45]

10                          **V.  CONCLUSION**

11      Based on the preceding discussion, Defendant's motion for summary judgment

12  at docket 17 is granted as to Plaintiff's Title VII claim and denied as to Plaintiff's breach

13  of good faith claim.

14

15      DATED this 25th day of September, 2017.

16

17                                    /s/
                          JOHN W. SEDWICK
                          UNITED STATES DISTRICT JUDGE
18

19

20

21

22

23

24

25

26
      [44]Doc. 46-6 at p. 1.

27
      [45]The court did not consider the hearsay statements set forth in Plaintiff's and Lunetta's
28  declarations.